UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re: CHAPTER 13

MICHAEL FERDERIGOS, Case No.: 6:26-bk-05325-TPG

Debtor.
_______________________________________/

**OBJECTION TO CONFIRMATION**

Seacoast National Bank ("Seacoast"), a secured creditor in this Chapter 13 case, hereby objects to confirmation of the Chapter 13 Plan filed by Debtor Michael Ferderigos (the "Debtor") on July 22, 2026 (Doc. No. 12) (the "Plan"). The Plan cannot be confirmed because it fails to provide for payment in full of Seacoast's **fully matured pre-petition mortgage claim through the life of the Plan**, is not feasible, and was not proposed in good faith.

Seacoast holds a first priority mortgage on 10454 Birch Tree Lane, Windermere, Florida 34786 (the "Property"), the Debtor's principal residence. Seacoast filed its Proof of Claim on September 8, 2026, asserting a secured claim of $450,671.79 (the "Seacoast Claim").[1] The Seacoast Claim is based on a first priority mortgage on the Property which fully matured on March 5, 2024, two years before the Petition Date. The Debtor's schedules value the Property at $1,200,000, leaving Seacoast fully secured entitled to its principal, interest, default interest, costs and attorney's fees, both pre and post petition.

Seacoast objects to the Plan because it does not pay the full Seacoast Claim in full over the life of the Plan, and the Debtor has not proposed to surrender the Property. Instead, the Plan places Seacoast in Section C.5(c) for Mortgage Modification Mediation ("MMM") and proposes only

[1] Proof of Claim No. 6.

$1,500 per month in adequate protection which is prohibited by Section 1322(c)(2) of the Bankruptcy Code.[2]

## I. Factual Background

### A. The Loan

1. On March 5, 2014, Debtor executed a Credit Agreement and Disclosure (hereinafter the "Agreement"), in the principal sum of $180,000.00 secured by a Mortgage recorded on March 17, 2014, in Orange County Official Records Book 10717, Page 3934, Document # 20140135782, which mortgaged the Property owned by and in possession of Debtor and his wife, Leslie A. Ferderigos. The legal description of the Property is as follows:

> Lot 23, Windermere Downs Phase III, according to the Map or Plat thereof, as recorded in Plat Book 28, Page 26 of the Public Records of Orange County, Florida
>
> Commonly known as 10454 Birch Tree Lane, Windermere, Florida 34786
>
> Tax Identification Number 05-23-28-9335-00230.

2. Debtor defaulted by failing to remit the payment due at **maturity on March 5, 2024**.

3. Debtor also defaulted by failing to pay the real property taxes when due and by failing to provide proof of insurance.[3]

4. On May 21, 2024, Seacoast made demand upon Debtor to remit payment sufficient to pay off the loan, but Debtor failed to do so.

### B. State Court Litigation

5. Seacoast filed a foreclosure action on July 10, 2024, in the Circuit Court of Orange County, Florida ("State Court Case").

---

[2] The accruing daily interest rate is currently $46.29, totaling approximately $1,389 a month.

[3] As of the Petition Date and as of the date of this objection the Debtor continues to fail to pay for insurance.

6. Leslie Ferderigos[4] filed a motion to dismiss on October 19, 2024 and Debtor filed a motion to dismiss on October 22, 2024, and both defendants filed an amended motion to dismiss the complaint on October 24, 2024 in the State Court Case.

7. On October, 28, 2024, the Debtor and his wife removed the State Court Case to the United States District Court for the Middle District of Florida, Case No.: 24-1944-RMN (the "District Court Case").

8. Thereafter, on October 29, 2024, the Debtor and his wife filed a 60 page multi count purported class action lawsuit and counter-claim against Seacoast (the "Ferderigos Counter-Claim").

9. In the District Court Case, Seacoast moved to remand the case back to state court and for dismissal of the Ferderigos Counter-Claim. Seacoast was forced to expend significant legal fees briefing and arguing the motion to remand and motion to dismiss the Ferderigos Counter-Claim as well as other pre-trial requirements required by the Court in the District Court Case.

10. On March 19, 2025, the Court in the District Court case remanded the matter back to the state court.

11. On June 23, 205, all three motions to dismiss filed by the Debtor and his wife were denied after more brief writing and hearings.

12. Thereafter, the Debtor and his wife filed their answer and affirmative defenses (untimely) on November 24, 2025, after Seacoast had moved for entry of default.

13. On December 22, 2025, Seacoast filed a Motion for Summary Judgment which was set for hearing on March 24, 2026.

[4] A retired State of Florida licensed attorney.

14. On March 21, 2026, the Debtor filed a prior bankruptcy case in this Court, Case No. 6:26-bk-01972-TPG ("First Bankruptcy Case"). Debtor failed to file any Schedules or Statement of Financial Affairs in the First Bankrutpcy Case and the case was dismissed.

15. Seacoast reset the hearing on it Motion for Summary Judgment for July 16, 2026.

16. On the eve of the reset hearing, Debtor filed this instant case on July 15, 2026.

**C. Debtor**

17. The Debtor is a licensed State of Florida attorney since 2002.[5]

**D. Debtor's Schedules**

18. Debtor values the Property at $1,200,000.

19. Debtor's Schedule J reports $0.00 for real estate taxes, $0.00 for homeowner's insurance, and $0.00 for home maintenance, repair, and upkeep for the Property.

20. Schedule I identifies Bluestream as the Debtor's employer for nine months, reports gross monthly wages of $5,000.02, and reports take-home pay of $4,380.87. Schedule J reports monthly expenses of $2,412.00 and net monthly income of $1,968.87. The Plan requires $2,100.00 per month, which is $131.13 more than reported net income before accounting for property taxes, insurance, and maintenance.

21. Form 122C-1 reports current monthly income of $2,632.08 based on the six months before filing, including $0.00 in April and May 2026.

**E. Debtor's Plan**

22. The Plan proposes to pay an adequate protection payment of $1,500 a month to Seacoast but does not otherwise propose to pay the Seacoast Claim in full through the Plan.

[5] The Debtor's law firm Ferderigos & Lambe represented Louis J. Pearlman. Debtor and his firm were parties to three adversary proceedings in that jointly administered bankruptcy case.

**II. The Plan Improperly Treats Seacoast's Fully Matured Mortgage (11 U.S.C. §§ 1322(b)(2), (b)(5), (c)(2), and 1325(a)(5))**

23. Seacoast's claim is secured only by a first priority security interest in real property that is the Debtor's principal residence. Section 1322(b)(2) generally prohibits modification of such a claim, subject to the specific statutory provisions governing cure, maintenance, and matured claims. See *Nobelman v. American Savings Bank*, 508 U.S. 324, 332 (1993).

24. The loan matured in March 2024, over two years before the July 15, 2026 Petition Date.

25. Section 1322(b)(5) permits a plan to cure a default and maintain payments only on a claim "on which the last payment is due ***after*** the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5) (emphasis added). Because the loan matured before this case was filed, there are no ongoing installment payments to maintain, and § 1322(b)(5) does not apply.

26. Section 1322(c)(2) addresses this circumstance: when the last payment on the original payment schedule for a claim secured only by the debtor's principal residence is due before the final plan payment, the plan may provide for payment of the claim only as modified pursuant to § 1325(a)(5). *See In re Kelly*, 283 B.R. 808, 810 (Bankr. M.D. Fla. 2002) (section 1322(c)(2) "leaves no doubt that a debtor in a Chapter 13 may deal with a fully matured mortgage provided the mortgage is fully paid off and satisfied before the last payment on the mortgage under the confirmed Chapter 13 Plan is due."); *In re Mendez*, 600 B.R. 321, 328 (Bankr. D. New Jersey 2019) (Absent residential mortgagee's consent to modification, Chapter 13 debtor-mortgagor had only two options with regardto mortgage debt upon which he had defaulted and on which final judgment of foreclosure had been entered prepetition: payment over the duration of plan of either: (1) the final judgment, or (2) the entire amount of the fully matured, defaulted mortgage); *In re Mayer*, 2013 WL 4608938 (Bankr. M.D. Fla 2013) (same).

27. Accordingly, if the Debtor seeks to modify Seacoast's matured claim under § 1322(c)(2), the Plan must satisfy § 1325(a)(5). Because Seacoast has not accepted the Plan and the Debtor has not surrendered the Property, the Plan must provide for retention of Seacoast's lien until payment of the underlying debt or discharge, together with distributions having a present value at least equal to the allowed secured claim.

28. The Plan does not provide that treatment. Its placement of Seacoast in Section C.5(c) (MMM) does not provide, as to Seacoast's matured claim, the specific § 1325(a)(5) treatment required here, including retention of the lien until payment of the underlying debt or discharge and distributions with a present value equal to the allowed secured claim. The Plan's general lien language does not cure the absence of claim-specific treatment for the matured debt.

29. Seacoast's Proof of Claim asserts a secured amount of $450,671.79. The July 14, 2026 payoff statement identifies current principal of $177,863.16, interest of $41,440.70, late charges of $415.52, an escrow balance of $46,675.98, and substantial additional legal fees and costs.[6] At $1,500 per month for 60 months, the proposed adequate protection totals only $90,000—grossly less than the asserted secured claim and not its present value.

30. The Middle District of Florida Model Plan contains Section C.5(g) for claims secured by real or personal property to be paid with interest through the Plan under §§ 1322(b)(2) fully matured mortgage). The Debtor did not use Section 1322(c)(2) for Seacoast; Section C.5(g)

---

[6] If the Court inquires why the attorney's fee portions of the Seacoast Claim are so high, the Court need only look at the record in the State Court Case and District Court Case where the Debtor and his wife unleashed World War III against Seacoast with frivolous defenses and counter-claims (class action counter-claims no less) in state and federal court over a fully matured $180,000 mortgage. The Debtor and his wife could have refinanced the Property based on the loan to value ratio or sold the Property and preserved equity in the Property, but chose instead a path of scorched earth litigation (including attempting to sue Seacoast's process server) over a sensible resolution to the matured mortgage. They now face the consequences of their voluntary actions. And as attorneys (the Debtor's wife is a former attorney), they should have known better.

lists only Windermere Downs Community. The Plan therefore fails to provide a confirmable treatment for Seacoast's matured mortgage claim.

**III. The Plan Is Not Feasible (11 U.S.C. § 1325(a)(6))**

31. Section 1325(a)(6) requires that "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6).

32. Schedule J reports $0.00 for real estate taxes, $0.00 for homeowner's or renter's insurance, and $0.00 for home maintenance, repair, and upkeep for the Property, even though the Debtor values the Property at $1,200,000 and proposes to retain it.

33. Those omitted expenses are essential costs of owning and preserving the Property. The Debtor's failure to budget any amount for ad valorem taxes or homeowner's insurance understates actual expenses and overstates the funds available for Plan payments. The omission is particularly serious because the Debtor does not carry homeowner's insurance on the Property, placing Seacoast's collateral at risk of loss. The schedules likewise identify the 2012 Porsche Cayenne as "not drivable - not insured" due solely to a headlight being out; further reflecting the absence of a realistic insurance budget.

34. The MMM provision of the Middle District of Florida Model Plan, and Administrative Order FLMB-2023-3, require adequate protection payments for MMM treatment to be no less than the amount needed to pay homeowner's association fees and one-twelfth of annual ad valorem property taxes and annual homeowner's insurance premium. The Plan's $1,500 payment does not cure the Debtor's failure to disclose or fund those expenses.

35. Schedule I identifies Bluestream as the Debtor's employer for nine months, reports gross monthly wages of $5,000.02, and reports take-home pay of $4,380.87. Schedule J reports monthly expenses of $2,412.00 and net monthly income of $1,968.87. The Plan requires $2,100.00

per month, which is $131.13 more than reported net income before accounting for property taxes, insurance, and maintenance.

36. Form 122C-1 reports current monthly income of $2,632.08 based on the six months before filing, including $0.00 in April and May 2026. The form also reflects three dependents and a three-year commitment period. This income history is unstable, and the Schedule I note that the Debtor and spouse are "trying to reconcile" and that the spouse has her own income is speculative and cannot support confirmation.

37. When the omitted carrying costs and lack of insurance are considered, the Debtor cannot demonstrate the ability to make the Plan payments while retaining the Property. The Plan is therefore not feasible under § 1325(a)(6).

38. A Chapter 13 Plan cannot be confirmed unless the debtor will be able to make all payments under the plan. *Hamilton v. Lanning*, 560 U.S. 505, 521, 130 S. Ct. 2464, 177 L. Ed. 2d 23 (2010).

**IV. The Plan Was Not Proposed In Good Faith (11 U.S.C. §§ 1325(a)(3) and (a)(7))**

39. Section 1325(a)(3) requires that a Chapter 13 plan be proposed in good faith and not by any means forbidden by law, and § 1325(a)(7) requires that the Debtor's petition be filed in good faith.

40. The Debtor filed a prior bankruptcy case in this Court, Case No. 6:26-bk-01972-TPG, on March 21, 2026 less than four months before filing this case on July 15, 2026. That case was dismissed based on the Debtor's failure to file Schedules or comply with Orders of the Court.

41. The serial filing, viewed together with the Plan's inadequate treatment of Seacoast's fully matured and fully secured mortgage claim, supports the inference that this case

and Plan are being used to delay Seacoast's enforcement of its rights rather than to effectuate a bona fide reorganization.

42. The Plan's failure to provide payment in full of the secured claim and its omission of essential Property-carrying costs further call into question the Debtor's good faith and the confirmability of the proposed reorganization.

## V. Reservation of Rights

Seacoast reserves the right to raise additional objections and to amend or supplement this Objection as may be necessary based on further review of the Plan, the claims register, the Debtor's schedules, or subsequent developments in this case.

**WHEREFORE,** Seacoast National Bank respectfully requests that the Court deny confirmation of the Plan or, in the alternative, require the Debtor to file an amended plan that adequately treats Seacoast's claim in compliance with 11 U.S.C. §§ 1322 and 1325 and grant such other and further relief as the Court deems just and proper.

Dated: September 9, 2026.

Respectfully submitted,

**AKERMAN LLP**

By: *s/ Esther McKean*
Esther McKean, Esquire
Florida Bar Number: 28124
420 South Orange Avenue, Suite 1200
Orlando, FL 32801
Phone: (407) 423-4000
Fax: (407) 843-6610
Email: esther.mckean@akerman.com

Counsel for Creditor Seacoast National Bank

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was furnished by CM/ECF this 9th day of September 2026 to all parties receiving electronic service via CM/ECF in this case and by U.S. Mail, first-class, postage paid on September 10, 2026 to Michael Ferderigos, 10454 Birch Tree Lane, Windermere, FL 34786.

By: *<u>/s/ Esther McKean</u>*
Esther McKean, Esquire