UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re: CHAPTER 13

MICHAEL FERDERIGOS, Case No.: 6:26-bk-05325-TPG

Debtor.
_______________________________________/

**EXPEDITED MOTION FOR RELIEF FROM STAY**

Seacoast National Bank ("Seacoast"), by and through its undersigned counsel, moves under 11 U.S.C. § 362 and Local Rule 4001-1 for relief from the automatic stay and, in support, states as follows:

**PRELIMINARY STATEMENT**

Seacoast's collateral is the home where Debtor resides and claims a homestead exemption; however, the Debtor's home is subject to a first priority mortgage which matured on its own terms two years before this current Chapter 13 case was filed. Debtor is a licensed Florida attorney. Debtor has filed two bankruptcy cases this year on the eve of summary-judgment hearings in a state court foreclosure proceeding described below. The Debtor recently filed an unconfirmable Chapter 13 Plan (Doc. No. 12). Also, Debtor has failed to insure the Property (hereinafter defined) and this failure continues in this case as Debtor reports $0.00 on Schedule J for homeowners' insurance.

Undersigned counsel has raised these issues at hearing, the meeting of creditors and in writing to Debtor's counsel. However, Debtor has steadfastly refused to file a confirmable plan or otherwise provide proof of insurance. Cause therefore exists under § 362(d)(1) to terminate the stay and permit Seacoast to enforce its rights and proceed with foreclosure.

## BACKGROUND

### A. The Loan

1. On March 5, 2014, Debtor executed a Credit Agreement and Disclosure (the "Agreement") for $180,000.00, secured by a Mortgage recorded on March 17, 2014, in Orange County Official Records Book 10717, Page 3934, Document # 20140135782. The Mortgage encumbers the Property, which Debtor and his wife, Leslie A. Ferderigos, own. The legal description of the real property is as follows:

> Lot 23, Windermere Downs Phase III, according to the Map or Plat thereof, as recorded in Plat Book 28, Page 26 of the Public Records of Orange County, Florida
> Commonly known as 10454 Birch Tree Lane, Windermere, Florida 34786
>
> Tax Identification Number 05-23-28-9335-00230.

(the "Property").

2. Debtor defaulted by failing to remit the payment due at **maturity on March 5, 2024**.

3. Debtor also defaulted by failing to pay real property taxes when due and by failing to provide proof of insurance.

4. On May 21, 2024, Seacoast demanded payment sufficient to pay off the loan, but Debtor failed to pay.

### B. State Court Litigation

5. Seacoast filed a foreclosure action on July 10, 2024, in the Circuit Court of Orange County, Florida ("State Court Case").

6. Leslie Ferderigos[1] filed a motion to dismiss on October 19, 2024. Debtor filed a motion to dismiss on October 22, 2024, and both defendants filed an amended motion to dismiss on October 24, 2024, in the State Court Case.

7. On October 28, 2024, Debtor and his wife removed the State Court Case to the United States District Court for the Middle District of Florida, Case No.: 24-1944-RMN (the "District Court Case").

8. Thereafter, on October 29, 2024, Debtor and his wife filed a 60-page, multicount purported class-action lawsuit and counterclaim against Seacoast (the "Ferderigos Counter-Claim").

9. In the District Court Case, Seacoast moved to remand the case to state court and to dismiss the Ferderigos Counter-Claim. Seacoast was forced to incur significant legal fees briefing and arguing those motions and complying with the Court's other pretrial requirements.

10. On March 19, 2025, the District Court remanded the matter to state court.

11. On June 23, 2025, the state court denied all three motions to dismiss after additional briefing and hearings.

12. Thereafter, Debtor and his wife filed an untimely answer and affirmative defenses on November 24, 2025, after Seacoast moved for entry of default.

13. On December 22, 2025, Seacoast filed a Motion for Summary Judgment, set for hearing on March 24, 2026.

14. On March 21, 2026, Debtor filed his first bankruptcy case in this Court, Case No. 6:26-bk-01972-TPG (the "First Bankruptcy Case"). He failed to file any Schedules or a Statement of Financial Affairs, and the First Bankruptcy Case was dismissed.

---

[1] A retired State of Florida licensed attorney.

15. Seacoast reset the hearing on its Motion for Summary Judgment for July 16, 2026.

16. On the eve of the rescheduled hearing, Debtor filed this second bankruptcy case on July 15, 2026—one day before the hearing.

17. Seacoast filed Proof of Claim No. 6 in this case, under penalty of perjury, attaching the Verified Complaint from the State Court Action. The Verified Complaint establishes the amount owed and confirms the Debtor's default under the applicable insurance requirements.

18. Seacoast's Proof of Claim asserts a secured amount of $450,671.79. The July 14, 2026 payoff statement identifies current principal of $177,863.16, interest of $41,440.70, late charges of $415.52, an escrow balance of $46,675.98, and substantial additional legal fees and costs.[2] At $1,500 per month for 60 months, the proposed adequate protection totals only $90,000—grossly less than the asserted secured claim and not its present value.

### C. Debtor

19. Debtor has been a licensed Florida attorney since 2002. His non-filing spouse is also a former licensed attorney who gave up her law license.

### D. Debtor's Schedules

20. Debtor values the Property at $1,200,000.

21. Debtor's Schedule J reports $0.00 for each of the following: real estate taxes, homeowners' insurance, and maintenance, repair, and upkeep of the Property.

---

[2] If the Court inquires why the attorney's fee portions of the Seacoast Claim are so high, the Court need only look at the record in the State Court Case and District Court Case where the Debtor and his wife unleashed World War III against Seacoast with frivolous defenses and counter-claims (class action counter-claims no less) in state and federal court over a fully matured $180,000 mortgage. The Debtor and his wife could have refinanced the Property based on the loan to value ratio or sold the Property and preserved equity in the Property, but chose instead a path of scorched earth litigation (including attempting to sue Seacoast's process server) over a sensible resolution to the matured mortgage. They now face the consequences of their voluntary actions. And as attorneys (the Debtor's wife is a former attorney), they should have known better.

## LACK OF INSURANCE

22. Seacoast has repeatedly requested proof that the Property is insured as required by the Mortgage. Despite those repeated demands, Debtor has steadfastly refused to provide proof of insurance.

23. The State Court Case identifies Debtor's failure to maintain insurance as a default.

24. Debtor has failed to maintain insurance for more than three years.

25. At the August 12, 2026 hearing before this Court, undersigned counsel raised the lack of insurance. Debtor's counsel stated that proof would be provided by the end of the week.

26. At the August 13, 2026 meeting of creditors, undersigned counsel again raised the lack of insurance.

27. On August 19, 2026, undersigned counsel requested proof of insurance in writing from Debtor's counsel.

28. Despite these requests, Debtor has provided no proof of insurance.

29. Debtor has made no adequate protection payments.

30. Neither Debtor's Schedules nor Plan provides for any payment toward homeowners' insurance.

## DEBTOR'S PLAN IS UNCONFIRMABLE

31. The Plan proposes to pay an adequate protection payment of $1,500 a month to Seacoast despite that the loan with Seacoast had fully matured years before the Petition Date.

32. Seacoast filed its Proof of Claim on September 8, 2026, asserting a secured claim of $450,671.79 for a mortgage which fully matured before this Chapter 13 case was filed.[3]

[3] Proof of Claim No. 6.

33. Schedule J provides Debtor's monthly net income is $1,968.87, prior to any payment toward Seacoast or homeowners' insurance.

34. On September 9, 2026, Seacoast filed an Objection to Confirmation[4] and incorporates those grounds.

## BASIS FOR RELIEF

### A. Seacoast's Interest in the Property is Not Adequately Protected Due to Debtor's Failure to Insure the Property

35. Section 362(d)(1) of the Bankruptcy Code authorizes relief from the automatic stay for cause, including the lack of adequate protection of an interest in property. Here, cause is established: Debtor has failed to insure the Property for more than three years, has budgeted $0.00 for homeowners' insurance, and has made no adequate protection payments. That three-year failure to insure, combined with the $0.00 insurance budget and the absence of adequate protection payments, conclusively establishes cause under § 362(d)(1).

36. Hazard insurance on collateral is an "element of adequate protection of the collateral." *Mellon Bank, N.A. v. Crystian (In re Crystian)*, 197 B.R. 803, 806 (Bankr. W.D. Penn. 1996). *See also In re Elmira Litho, Inc.*, 174 B.R. 892, 902, n. 9 (Bankr. S.D.N.Y. 1994) (explaining that the debtor's failure to maintain property insurance establishes a *prima facie* case of lack of adequate protection in collateral); *General Motors Acceptance Corp. v. Ryals (In re Ryals)*, 3 B.R. 522, 524 (Bankr. E.D. Tenn. 1980) (maintaining insurance on the creditor's collateral is a requirement of adequate protection.); *In re Crompton*, 73 B.R. 800, 810-11 (Bankr. E.D. Pa. 1987) (requiring the debtors to maintain insurance payments to deem their mortgage adequately protected); *Matter of Stagedoor, Inc.*, 32 B.R. 13, 13 (Bankr. W.D. Pa. 1983) (granting stay relief where the debtor defaulted on insurance premiums); *In re Palacios*, 2013 WL 1615790

[4] Doc. No. 22.

at *3 (9th Cir. BAP Apr. 15, 2013) ("A debtor's failure to insure property can be a basis to grant a secured creditor relief from stay under § 362(d)(1) for lack of adequate protection of its collateral."). These authorities confirm that a debtor's failure to maintain hazard insurance on a creditor's collateral demonstrates a lack of adequate protection.

37. Debtor has failed to provide proof that the Property is insured despite Seacoast's numerous requests. This failure, together with the facts above, leaves Seacoast's security interest without adequate protection and constitutes cause for relief from the automatic stay under § 362(d)(1).

**B. Relief from Stay Under 362(d)(1) is Proper as Plan is Patently Unconfirmable**

38. Seacoast is further entitled to stay relief because its interest in the Property is not being adequately protected.

39. Seacoast holds an allowed secured claim in the amount of $450,671.79 which cannot be modified, and any cure must be paid within 60 months because the note matured prepetition. *See* 11 U.S.C. §§ 1322(b)(2), (3), 1322(c)(1), (2), and 1325(a)(5).

40. Monthly payments would be in excess of $7,500.00 per month. This the Debtor cannot do. His net monthly household income is only $1,968.87, this is far short of the amount needed to make equal monthly periodic payments. Debtor cannot present a feasible plan that includes periodic payments of Seacoast's claim. Accordingly, cause exists to modify the stay. 11 U.S.C. §§ 362(d), 1301(c).

41. *In re Palacios,* No. CC-12-1502-KiPaTA, 2013 WL 1615790 *3 (9th Cir. BAP Apr. 15, 2013), the court upheld the Bankruptcy Court's grant if relief from stay under 11 U.S.C. § 362(d)(1) because the loan at issue had matured pre-petition and debtor lacked insurance, just as in this case.

> The bankruptcy court granted relief under § 362(d)(1) because Palacios had failed to provide Upside with proof of current insurance on the Property, and because he had failed to make postpetition mortgage payments to Upside - payments the bankruptcy court contended would have been required under his eventual chapter 13 plan."
>
> ***
>
> Palacios conceded at the stay relief hearing that in any proposed chapter 13 plan he would have to pay Upside the full amount of the Note over the term of the plan. We agree. However, we cannot agree with Palacios's argument that considering the matter of plan payments at this point was premature. Palacios's chapter 13 plan, filed with his bankruptcy petition nearly three months prior to the stay relief hearing, proposed to cure only the prepetition arrearages on the Note, with monthly payments of $253.42 for sixty months. The plan proposed no monthly mortgage payments for the remaining balloon amount due and owing. As a result, the plan was unconfirmable on its face. Further, at the time of the stay relief hearing, Palacios's Schedules I and J reflected that he would be unable to pay any amount closely approximating the $3,682.29 monthly payment required to pay Upside in full.

*Id.* at *4.

WHEREFORE, Seacoast National Bank respectfully requests that the Court enter an order under 11 U.S.C. § 362(d)(1) and Local Rule 4001-1: (a) granting Seacoast relief from the automatic stay as to the Property for cause, including lack of adequate protection; (b) terminating the stay to permit Seacoast to pursue its foreclosure remedies; (c) an injunction from any further bankruptcy case impeding Seacoast's rights to foreclose on the Property; and (d) granting such other relief as the Court deems just and proper.

Dated: September 22, 2026.

AKERMAN LLP

By: s/ Esther McKean
Esther McKean, Esquire
Florida Bar Number: 28124
420 South Orange Avenue, Suite 1200
Orlando, FL 32801
Phone: (407) 423-4000
Fax: (407) 843-6610
Email: esther.mckean@akerman.com
Counsel for Creditor Seacoast National Bank

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was furnished either by electronic notification or U.S. mail, postage prepaid and properly addressed, this 22nd day of September, 2026, to:

Michael Ferderigos
10454 Birch Tree Lane
Windermere, FL 34786

Laurie K Weatherford, Esq.
Post Office Box 3450
Winter Park, FL 32790

Robert B Branson, Esq.
BransonLaw PLLC
1501 E. Concord Street
Orlando, FL 32803

United States Trustee
Office of the United States Trustee
George C. Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801

*/s/ Esther McKean*
Attorney